Jeannie LEWIS–LEVETT,
Appellant–Defendant,

v.

Richard D. DAY and Martha A. Day, Appellees–Plaintiffs.

No. 50A03–0705–CV–199.

Court of Appeals of Indiana.

Oct. 22, 2007.

June E. Bules, Plymouth, IN, Attorney for Appellant.

Jere L. Humphrey, Wyland, Humphrey, Wagner, Gifford & Clevenger, LLP, Plymouth, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Jeannie Lewis–Levett appeals from the trial court's entry of summary judgment in favor of Richard D. Day and Martha A.

Day ("the Days") on their complaint to enjoin Lewis–Levett from operating a day-care in her home. On appeal we address two issues, namely:

1. Whether Lewis–Levett's operation of a licensed child care home in her residence violates a restrictive covenant that prohibits business or commercial enterprises.[1]

2. Whether the enforcement of restrictive covenants prohibiting business or commercial enterprises on residential property violates public policy favoring home day care.

On cross appeal, the Days raise a single issue, namely, whether the trial court erred when it did not grant summary judgment enjoining Lewis–Levett from operating any day care facility on the premises.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 31, 2005, Lewis–Levett purchased a residence at 16486 Sheryl Court in Golfview Estates in Plymouth. The original developers and, later, the Days, as successor owners and developers, recorded instruments evidencing restrictive covenants applicable to the lots in Golfview Estates. In relevant part, Lewis–Levett's lot is subject to the following restrictive covenants:

1. *USE OF LOTS.* Each lot in the subdivision shall be restricted to a one-family dwelling and no more than one family shall reside in any dwelling. No homeowner may take in another person as a roomer without written permission from the grantors.

\* \* \*

4. *BUSINESSES.* No lot nor any building erected thereon shall at any time be used for the purpose of any trade, business, manufacture or profession. Peddling, soliciting, or commercial enterprises are not allowed in the estates or subdivision.

\* \* \*

13. *COVENANTS RUN WITH THE LAND.* The above and foregoing limitations, restrictions and covenants shall be construed as covenants running with the land for the benefit of future owners of lots within this subdivision and shall extend to and be obligatory and binding upon the person or persons to whom title may be conveyed by the grantors, and to all future owners of the lots in the subdivision, and may be enforced against any person violating the same or any of them by the owner or owners of any lots in this subdivision by injunctive proceedings, and the plaintiff or plaintiffs shall be entitled to recover, as a part of their judgment, reasonable fees for their attorney in the prosecution of such action.

Appellant's App. at 58, 59, 62.

On November 26, 2005, Lewis–Levett began operating a licensed child care home in her home in Golfview Estates. On weekdays, she cares for up to twelve children on a daily basis, three of whom also live in Golfview Estates. Children are dropped off between 6:30 and 8:30 a.m. and are picked up between 4:30 and 5:10 p.m. Lewis–Levett's back yard is fenced and contains three pieces of wooden playground equipment and four other smaller play toys. The children play under adult supervision in her yard, six at a time, for

---

1. Lewis–Levett also alleges that the trial court erred when it awarded attorney's fees because it erred in granting summary judgment. Because we conclude that the grant of summary judgment in favor of the Days was not error, we need not address the attorney's fee issue.

no more than thirty minutes per day. Lewis–Levett's yard has no sign advertising child care, but with her federal income tax return she filed a Schedule C (Profit or Loss From Business) and Form 8829 (Expenses for Business Use of Your Home), reporting that sixty percent of her home is used for the day care business.

On May 4, 2006, the Days filed a complaint requesting a temporary and permanent injunction against Lewis–Levett's operation of a child care home in her residence. On July 7, 2006, the Days filed an amended complaint to add a claim for attorney's fees. On July 19, 2006, the Days filed their motion for summary judgment and a memorandum in support of that motion, and designation of evidence. On August 1, 2006, Lewis–Levett filed her motion for summary judgment, memorandum in support of that motion, and designation of evidence. On September 26, 2006, the trial court held a hearing on the cross-motions for summary judgment. On December 27, 2006, the trial court granted summary judgment in favor of the Days, enjoining Lewis–Levett from operating a licensed day care home and awarding attorney's fees; it denied Lewis–Levett's cross motion. Lewis–Levett appeals, and the Days cross appeal.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing summary judgment, this court views the same matters and issues that were before the trial court and follows the same process. *Estate of Taylor ex rel. Taylor v. Muncie Med. Investors, L.P.*, 727 N.E.2d 466, 469 (Ind.Ct. App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Jesse v. Am. Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App. 2000), *trans. denied.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind.Ct.App.2000). If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Ledbetter v. Ball Mem'l Hosp.*, 724 N.E.2d 1113, 1116 (Ind.Ct.App. 2000), *trans. denied.*

### Appeal

Lewis–Levett contends that the trial court erred when it granted summary judgment enjoining her from operating a licensed day care in her home. She argues that the operation of a licensed day care is a residential use of her home and, therefore, that such use does not violate Golfview Estate's restrictive covenants. Alternatively, she maintains that if operating a licensed day care is deemed to constitute business use of her home, the enforcement of the restrictive covenants at issue violates Indiana public policy in favor of home day care. We address each contention in turn.

### *Issue One: Residential or Commercial Use*

■ Lewis–Levett first claims that the licensed child care home she operates constitutes residential use of her property. In support, she cites to *Stewart v. Jackson*, 635 N.E.2d 186, 193 (Ind.Ct.App.1994), *trans. denied*, in which this court held that the operation of an unlicensed home day care constituted a residential use and, therefore, did not violate restrictive covenants prohibiting commercial use of lots in a residential neighborhood. But the hold-

ing in *Stewart* is limited to *unlicensed* day care homes.[2] *Stewart,* 635 N.E.2d at 190 n. 2 ("We do not address the broader issue of whether licensed home day care is a residential use."). Although the analysis applied in *Stewart* is applicable, the holding in that case does not control here. Thus, we are presented with a question of first impression, namely, whether the operation of a *licensed* day care home constitutes a residential use.

In *Stewart,* this court applied the "plain and ordinary meaning of 'residential purpose'" as "one in which people reside or dwell, or in which they make their homes." *Stewart,* 635 N.E.2d at 192 (quoting *Adult Group Properties, Ltd. v. Imler,* 505 N.E.2d 459, 469 (Ind.Ct.App.1987) (Miller, J., dissenting), *trans. denied*). In *Stewart,* "[t]he language of the restriction [was] concerned with a physical activity carried on upon the premises, and not with the presence or absence of a profit-making motive on the part of the landowner." *Id.* Thus, we looked at the type and obtrusiveness of the day care's activities to discern whether they constituted a residential use. Specifically, we considered the number of children in the day care, the income from the day care,[3] and the increase in traffic.

Here, Lewis–Levett cares for twelve children in her home. The record does not indicate whether Lewis–Levett's day care operation provides her primary source of income. However, the Days' designation of evidence in support of their summary judgment motion includes the Schedule C and Form 8829 that Lewis–Levett filed with her 2005 federal income tax return. On those forms, Lewis–Levett indicated that sixty percent of her home is used for business purposes. And while the homeowner in *Stewart* cared for only four children who were not relatives,[4] Lewis–Levett has twelve children in her day care. Although three of the children also reside in Golfview Estates, Lewis–Levett concedes in her brief that she could have up to twelve vehicles entering and exiting the subdivision twice daily to drop off and pick up the children, a substantial amount of traffic in a residential neighborhood. On these facts, we cannot say that Lewis–Levett's day care home operation is just a "slight departure from residential use[.]" *Id.* at 193.

Next we consider the public policy regarding licensed day care homes. Our policy discussion in *Stewart* is instructive:

The most evident display of Indiana's policy on home day care is the creation of the board for the coordination of child care regulation. *See* Ind.Code [§§ ] 12–17.2–3–1 to –11 (1994). The board studies the necessity for programs to meet the child care needs of Indiana residents and to assess the availability and projected need for safe and affordable child care and then reports its findings to the legislature. [Ind.Code § ] 12–17.2–3–10. One of the board members, Peggy Bakel, who is also the director of Child Care Resources, a non-profit organization that

---

2. We note that the holding in *Stewart* does not state a general rule but, instead, was based on the facts presented in that case. The determination of whether the operation of a day care home on residential property constitutes commercial use must be decided on a case-by-case basis.

3. The court considered the homeowner's income from her day care and whether it was her primary source of income. However, the court also noted that the receipt of money for day care services alone did not render her day care a business use. *Stewart,* 635 N.E.2d at 193.

4. The homeowner in *Stewart* cared for four children plus her own son and her nephew. The children related to a day care provider do not count as day care children. Ind.Code § 12–7–2–28.6(a) (2007).

trains day care providers and refers child care services to parents, testified at the trial. She testified that most parents choose home day care when it is available because it simulates the family. In home day care, children are not in an institutionalized setting and can learn and play at their own individual level. She further testified that home day care is more accommodating to parents' different work schedules because it usually offers more flexible hours than day care centers. Bakel related that in Indianapolis her referral agency lists 105 licensed day care homes that care for 984 children daily. None of these day care homes had openings for infants, and only 15 had openings for toddlers. Bakel approximated that there were 250 licensed day care homes in Indianapolis. The need for day care is undeniable where more parents work outside of the home.

In addition, Indiana's enactment of licensing statutes governing home day care shows further public policy concerns for the well-being of our children in day care situations. *See* Ind.Code [§§ ] 12–17.2–5–1 to –36 (1994). It is significant that our legislature has chosen not to regulate home day care with fewer than six children. *See* Ind.Code [§ ] 12–7–2–28.6 (1994). The deliberate abstinence from monitoring small home day care is indicative of an intent not to place barriers that inhibit these services. Public policy in Indiana clearly favors home day care.

*Stewart,* 635 N.E.2d at 193 (record citations omitted).

We acknowledge that Indiana has a strong public policy in favor of home day care.[5] As demonstrated by the testimony in *Stewart,* the legislature has created a board to coordinate child care regulation and enacted licensing statutes governing home day care. There is great demand for day care, and parents prefer home day care. *Id.* Nevertheless, and as we observed in *Stewart,* the legislature chose not to regulate *unlicensed* home day care, which we determined "to be indicative of an intent not to place barriers that inhibit these services." *Id.* at 193. We further interpret this choice by the legislature as its intent that unlicensed home day care be considered a residential use.

But this case involves a *licensed* day care home. Licensure is required because Lewis–Levett cares for twelve children who are not related to her. *See* Ind.Code §§ 12–7–2–28.6(a) (defining "child care home" as a home that serves any combination of part-time or full-time children, not to exceed twelve children at a time); 12–17.2–5–1(a) (mandating licensure for the operation of a child care home). And the legislature has enacted statutes and regulations governing the licensure and operation of child care homes. *See, e.g.,* Ind. Code §§ 12–17.2–5–1 through –37 (regarding licensure of day care homes); 470 Ind. Admin. Code 1–1.1–0.5 through –49 (rules governing the operation of child care homes[5]). Such extensive regulation indicates that the legislature considers larger day care homes, those requiring licensure, to be commercial enterprises that provide

---

**5.** In *Stewart,* we also observed that the restrictive covenants had become effective in 1978, "when many mothers did not work outside the home and cared for their children in their own homes.... [T]he covenants restricting the use of property to residential purposes and barring commercial use were not intend-

ed to prohibit *unlicensed* home day care." *Stewart,* 635 N.E.2d at 193 (emphasis added). Because the case before us involves a licensed day care, that finding regarding the intent behind older restrictive covenants does not apply here.

a much needed service but require government oversight.

On the facts presented, we conclude that Lewis–Levett's operation of a licensed day care home at her residence constitutes a commercial use. While we acknowledge that Indiana public policy supports licensed day care homes, that policy does not justify the obtrusive impact of Lewis–Levett's licensed day care home on her neighbors. Thus, the trial court did not err when it concluded that Lewis–Levett's licensed day care home did not constitute a residential use.

### Issue Two: Enforceability of Restrictive Covenant

■ We next address whether Indiana public policy in favor of home day care prohibits enforcement of the restrictive covenants at issue in this case. Indiana law permits restrictive covenants but finds them disfavored and justified only to the extent they are unambiguous and enforcement is not adverse to public policy. *Tippecanoe Assocs. II, LLC v. Kimco Lafayette 671, Inc.*, 829 N.E.2d 512, 514 (Ind.2005) (citation omitted). We agree with Lewis–Levett and *Stewart* that Indiana public policy favors home day care. But, again, our decision in *Stewart* was limited to unlicensed day care homes. As noted above, the extensive regulation of licensed day care homes indicates the legislature's determination that such operations are commercial and require licensure and government oversight. As such, we cannot say that the public policy in favor of home day care is without limits.

Although public policy favors home day care, we conclude that such policy is not violated by the enforcement of the restrictive covenants in this case. In other words, Indiana public policy favoring home day care does not supersede otherwise legitimate restrictive covenants prohibiting

the use of lots in Golfview Estates for commercial purposes. Lewis–Levett operates a licensed day care home out of her residence, using sixty percent of her home for that purpose. She cares for twelve children, none of whom are related to her, and she concedes that there could be up to twelve vehicles entering and exiting Golf View Estates twice each day. On the facts presented in this case, we cannot say that the trial court erred when it granted summary judgment enjoining Lewis–Levett from operating a licensed day care home at her residence in Golf View Estates.

### Cross–Appeal

■ On cross appeal, the Days contend that the trial court erred to the extent that it did not grant summary judgment in favor of the Days to enjoin Lewis–Levett's operation of *any* day care at her residence. In the amended complaint, the Days averred: "It is believed that contrary to the [restrictive covenant prohibiting commercial enterprises, Lewis–Levett] operates a child care home as a business," and the Days requested injunctive relief for violations of the recorded restrictions. Appellant's App. at 6. The evidence demonstrates that Lewis–Levett operates a licensed day care home out of her residence. By granting summary judgment enjoining Lewis–Levett from operating a licensed day care home, the court granted the relief requested in the amended complaint.

Moreover, the trial court did not have before it the case of "any" day care. Lewis–Levett operates a licensed day care home. The circumstances surrounding the operation of an unlicensed day care home would be quite different, resulting, for example, in at least half the number of children for whom Lewis–Levett currently provides care. The question of whether the operation of an unlicensed day care home would violate the Golf View Estates restrictive covenant that prohibits com-

mercial enterprises was not before the trial court. Thus, the cross appeal from the trial court's failure to grant summary judgment regarding any day care home is not properly before us. As such, the cross appeal is denied.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.