**William APPLEGATE, Susan Applegate, Roger Storey, Cindy Storey, Keith Caine, Gayle Caine, William Delp, Beverly Delp, Darryl W. Irvin, Mary Patricia Irvin, and Orrin Edward Weber, Appellants–Plaintiffs,**

v.

**Earl F. COLUCCI, Colucci Cabin Rentals LLC, Colucci Log Homes, and Vince M. Hubert, Appellees–Defendants.**

No. 62A05–0802–CV–112.

Court of Appeals of Indiana.

July 9, 2009.

Rehearing Denied Sept. 16, 2009.

Michael H. Hagedorn, Hagedorn Law Office, Tell City, IN, Attorney for Appellants.

Leslie C. Shively, Shively & Associates, P.C., Evansville, IN, Attorney for Appellees.

## OPINION

KIRSCH, Judge.

William Applegate, Susan Applegate, Roger Storey, Cindy Storey, Keith Caine, Gayle Caine, William Delp, Beverly Delp, Darryl W. Irvin, Mary Patricia Irvin, and Orrin Edward Weber (collectively "the Landowners") appeal the trial court's grant of partial summary judgment in favor of Earl F. Colucci, Colucci Cabin Rentals LLC, Colucci Log Homes, and Vince M. Hubert (collectively "Colucci") in the Landowners' action to enforce restrictive covenants. Colucci brings a cross-appeal on the trial court's grant of partial summary judgment in favor of the Landowners as to whether Colucci improperly subdivided its lots. The parties raise several issues, which we consolidate and restate as:

I.  Whether the trial court erred in finding as a matter of law that Colucci's use of its property did not violate the covenants and restrictions of the neighborhood because the short-term rental of its cabins constituted a residential use;

II.  Whether the trial court erred in not addressing the specific issue of whether Colucci's maintenance of a real estate office violated the covenants and restrictions;

III.  Whether the trial court erred in finding as a matter of law that Colucci had violated the covenants and restrictions by improperly subdividing its lots and in ruling that, because of this, Colucci was not entitled to attorney fees and costs; and

IV.  Whether the trial court erred in its determination of attorney fees.

We affirm in part, reverse in part, and remanded.

## FACTS AND PROCEDURAL HISTORY

The Landowners all own lots in the Magnet Valley Subdivision ("Magnet Valley"), which is located along the Ohio River. The original owner and developer of Magnet Valley was Herman Etienne, who recorded the Declarations of Covenants

and Restrictions ("the covenants"). The covenants provided in pertinent part:

1. *LAND USE.* All parcels except Lots No. 17, 32, 33, 34, & 35 shall be used only for residential purposes. Only permanent residential structures suitable for year-round living with electrical service and indoor plumbing shall be permitted on said lots. . . .

2. *SUB–DIVIDING LOTS.* No parcel shall be sub-divided any smaller than the original size of each separate parcel as set forth in the exhibits attached hereto.

. . . .

4. *SURROUNDINGS.* No commercial business shall be carried on upon any parcel. . . . Nothing herein contained shall prevent the leasing or renting of property or structures for residential use. . . .

*Appellants' App.* at 30–31.

All of the lots owned by the Landowners contain single-family residential structures, which were used mainly as weekend retreats or second homes. Earl Colucci ("Earl") owns three lots in Magnet Valley, Lots 21, 31, and 32. Vince Hubert ("Hubert") owns one lot, Lot 36, in the subdivision on which he built a cabin that he began leasing in Spring 2001. On October 20, 1998, Earl received a permit to construct a home on Lot 21, and subsequently built a cabin on the lot in 1999 or 2000, which he rented to the public. On September 17, 2001, Earl received a permit to build a home on Lot 32, which was constructed in 2001 or 2002 and is also rented to the public. In 2005, after receiving a building permit, Earl constructed a second structure on Lot 32, a cottage, which he also rented. Additionally, in 2003, Earl constructed two homes on Lot 31 after receiving permits, and began leasing them to the public.

All of these rental properties are fully furnished and contain dishes, pots and pans, and bed linens. Each cabin has a hot tub, kitchen appliances, and washer and dryer. The cabins are rented per night, with the longest rental periods being between one to two weeks. Each cabin can sleep between six to seventeen people; the largest cabin can accommodate up to seventeen people, and the smallest can sleep six to eight people. In 2001, Earl formed Colucci Cabin Rentals, LLC, which has been in business continuously since its incorporation. All of Earl's cabins are rented through Colucci Cabin Rentals, LLC, and additionally, Hubert's cabin is rented through the business, with Earl receiving a percentage of the rental fees. Colucci established a website in 2001 and promotes the cabin rental on the site. The cabin rental is also advertised in several publications and promotional material for Perry County and the surrounding area. Colucci additionally promotes his business by exhibiting at travel and boat shows.

In 2003, Colucci obtained a permit to construct a garage on Lot 21, which would be the second structure on the lot. A structure was subsequently built, of which half is used as a garage and for storage of tools by Colucci. The other half of the building contains a desk, computer, and telephone among other items of furniture, and Earl told people who have rented the cabins that the structure is his office. The telephone is registered to Colucci Cabin Rentals, and that number is listed on the website as the number to call to rent a cabin. *Appellants' App.* at 207. The business address of Colucci Cabin Rentals is listed as the physical address of the garage.

The Landowners filed a complaint against Earl on July 15, 2005 alleging violations of the covenants and seeking monetary damages and to enjoin him from any

activity that violates the covenants. Colucci filed an answer and a counterclaim, requesting a determination of their compliance with covenants. The Landowners' original complaint was amended on September 15, 2006 to add Hubert as a defendant. Colucci filed a motion for summary judgment as to the Landowners' complaint and as to its counterclaim, and the Landowners also filed a motion for summary judgment. A hearing on the cross-motions for summary judgment was held, and on August 15, 2007, the trial court issued findings of fact and conclusions and granting summary judgment in favor of Colucci "as to the interpretation of paragraph 4 of the covenants." and as to its counterclaim. *Appellants' App.* at 21; *Appellees' App.* at 21. The trial court also found in favor of the Landowners "as to the enforcement of paragraph 2 of the covenants." *Appellants' App.* at 21; *Appellees' App.* at 21. Colucci filed a motion to correct error. The Landowners filed a motion for entry of final judgment as the trial court's judgment did not dispose of all of the counts of the complaint. On January 8, 2008, they later filed an "Alternative Motion to Vacate and Enter New Findings of Fact, Conclusion of Law and Judgment and Motion to Correct Error," which included supplemental designated evidence. *Appellants' App.* at 282–83. On January 29, 2008, the trial court denied the Landowners' motion to vacate, amended its summary judgment order to state that only Earl was enjoined for violation of paragraph 2 of the covenants and that Hubert was entitled to recover attorney fees and costs from the Landowners, and granted the motion for entry of final judgment. The Landowners appeal, and Colucci cross-appeals.

## DISCUSSION AND DECISION

When reviewing a grant or denial of summary judgment, we apply the same standard as the trial court: summary judgment is only appropriate when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Bush v. State Farm Mut. Auto. Ins. Co.,* 882 N.E.2d 821, 823 (Ind.Ct.App.2008). Our standard of review is not altered by cross-motions for summary judgment. *Bush,* 882 N.E.2d at 823. We may not look beyond the evidence that the parties specifically designated and must accept as true the facts alleged by the non-moving party. *Hill v. Bolinger,* 881 N.E.2d 92, 94 (Ind.Ct.App.2008), *trans. denied.* We construe all evidence in favor of the non-moving party and resolve all doubts against the moving party. *Allen v. City of Hammond,* 879 N.E.2d 644, 646 (Ind.Ct. App.2008), *trans. denied.*

A restrictive covenant is an agreement between a developer and a homeowner to agree to refrain from using the property in a particular manner. *Johnson v. Dawson,* 856 N.E.2d 769, 772 (Ind.Ct.App.2006). Because covenants are a form of express contract, we apply the same rules of construction. *Id.* (citing *Renfro v. McGuyer,* 799 N.E.2d 544, 547 (Ind.Ct.App.2003), *trans. denied* (2004)). "Construction of the terms of a written contract is a pure question of law for the court, and we conduct a de novo review of the trial court's conclusions in that regard." *Id.* (citing *Grandview Lot Owners Ass'n v. Harmon,* 754 N.E.2d 554, 557 (Ind.Ct.App.2001)).

"Indiana law permits restrictive covenants but finds them disfavored and justified only to the extent they are unambiguous and enforcement is not adverse to public policy." *Id.* (citing *Holliday v. Crooked Creek Vills. Homeowners Ass'n Inc.,* 759 N.E.2d 1088, 1092 (Ind.Ct.App.

2001)). Restrictive covenants are strictly construed, and all doubts are resolved in favor of the free use of property and against restrictions. *Id.* at 773. The intent of the covenanting parties is to be determined from the specific language used and from the situation of the parties when the covenant was made. *Id.* Specific words and phrases cannot be read exclusive of other contractual provisions, and the parties' intentions must be determined by reading the contract in its entirety. *Id.* Contractual provisions are construed to harmonize the agreement and not render any terms ineffective or meaningless. *Id.*

### I. Colucci's Rental of Cabins

■ The Landowners argue that the trial court erred when it granted summary judgment for Colucci and found as a matter of law that Colucci did not violate the covenants by the activity of renting cabins in the neighborhood. They contend that Colucci's activity of renting six cabins in the neighborhood to the public constituted commercial business and therefore violated paragraph 4 of the covenants, which stated that "[n]o commercial business shall be carried on upon any parcel." *Appellants' App.* at 31. The Landowners do not believe that the rental activity by Colucci amounted to "leasing or renting of property or structures for residential use," which was allowed under paragraph 4 of the covenants. *Id.* Therefore, they claim that the trial court should have denied Colucci's motion for summary judgment and granted their motion.

Although it appears that this exact issue is one of first impression in Indiana, we can look to past cases dealing with what constitutes a residential use as guidance. In *Stewart v. Jackson,* 635 N.E.2d 186 (Ind.Ct.App.1994), *trans. denied,* this court faced the issue of whether the operation of an unlicensed daycare out of a home was a

residential use or whether it constituted a violation of the restrictive covenants. In that case, a neighbor cared for six children, of which one was her own and another was her nephew, in her home. *Id.* at 192. The neighbor received income from caring for these children, and only three of the children were driven to the daycare, which slightly increased the traffic in the neighborhood around pickup and drop-off times. *Id.* at 193. In our analysis, we stated the "plain and ordinary meaning of 'residential purpose'" was "one in which people reside or dwell, or in which they make their homes." *Id.* at 192. This court weighed the minimal obtrusiveness of the daycare and Indiana's public policy favoring home daycare against the plain and ordinary meaning of residential purpose, and found that the unlicensed home daycare was a residential use, which did not violate the restrictive covenants. *Id.* at 193.

Recently, in *Lewis–Levett v. Day,* 875 N.E.2d 293 (Ind.Ct.App.2007), *trans. denied,* this court had the opportunity to determine whether the operation of a licensed home daycare constituted a residential use and therefore not a violation of the restrictive covenants. There, a neighbor cared for twelve children in her home, indicated that sixty percent of her home was used for business purposes, and conceded that up to twelve vehicles may enter and exit the neighborhood twice daily to drop off and pick up the children. *Id.* at 296. Although this court acknowledged Indiana's public policy clearly favoring home daycare, it also recognized that licensed home daycares are different from unlicensed ones in that they are extensively regulated, and that this regulation indicated that the legislature considered such home daycares to be commercial enterprises "that provide a much needed service but require government oversight." *Id.* at 297–98. We therefore found that the

neighbor's operation of a licensed home daycare constituted a commercial use and that the trial court did not err when it concluded that such operation was not a residential use. *Id.* at 298.

Here, under paragraph 1 of the covenants, all parcels in the neighborhood except for a specified few were to be used for residential purposes only, and under paragraph 4, no commercial business shall be conducted on any parcel, but the leasing or renting of property for residential use was specifically not restricted. *See Appellants' App.* at 30–31. In its order granting summary judgment, the trial court concluded that paragraph 4 of the covenants did not prohibit Colucci from leasing its property for residential purposes to third parties for profit. *Appellees' App.* at 20. We must therefore determine whether Colucci's short-term rental of its cabins constitutes a residential use.

In looking at the language in the covenants, it is instructive that the covenants do not by express terms prohibit the short-term rental of the lots in the neighborhood. The covenants at issue do not contain any direct and definite prohibition against Colucci's nightly or weekly rental of its property. In fact, the covenants actually contain language that states, "Nothing herein contained shall prevent the *leasing or renting* of property or structures for residential use." *Appellants' App.* at 31 (emphasis added). The language does not provide whether this allowed-for leasing or renting must be long-term or set forth any basis for drawing a distinction between short-term and long-term rental of property. In fact, as long as the renting of the property is for residential use, it appears that it does not matter if it is short-term or long-term.

To determine if Colucci's rental of property constitutes a residential use, we must look to the definition of such term. Residential is defined as "of or relating to residence or residences." Merriam–Webster's Collegiate Dictionary 996 (10th ed.1994). Residence is defined as "the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn." *Id.* Our court has previously determined that the "plain and ordinary meaning of 'residential purpose'" is "one in which people reside or dwell, or in which they make their homes." *Stewart,* 635 N.E.2d at 192. The people who rent Colucci's cabins use the structures for eating, sleeping, and other typical activities associated with a residence or dwelling place. Although we recognize that the renters' occupation of the cabins is only on a temporary basis and the definition of residential seems to contemplate a more permanent presence, we find that this definition is at odds with the covenant language explicitly allowing the rental or lease of property. If the term "residential use" as used in the covenant language was meant to only apply to permanent and not temporary rental of property, then it would have been easy to explicitly state this and make the covenant unambiguous. In Indiana, restrictive covenants are disfavored and are strictly construed with all doubts resolved in favor of the free use of property and against restrictions. *Johnson,* 856 N.E.2d at 772–73. We therefore conclude that, because the language in the covenants is ambiguous, Colucci's short-term rental of its cabins does not run afoul of the covenants.[1]

---

**1.** The Landowners also argue that the trial court erred when it denied their "Alternative Motion to Vacate and Enter New Findings of Fact, Conclusions of Law and Judgment and Motion to Correct Error," which was filed on January 8, 2008. Because of our above conclusion regarding the ambiguous language in the covenants, we likewise conclude that the trial court did not err in denying the Landowners' motion.

## II. Maintenance of Real Estate Office

■ Landowners also contend that the maintenance of a real estate office to support the cabin rental activities on one of Colucci's properties violated paragraph 1 of the covenants which provides that the parcels "shall be used only for residential purposes" and paragraph 4 which provides that "[n]o commercial business shall be carried on upon any parcel." *Appellant's App.* at 30–31. In its entry, the trial court made no specific reference to this claim, but the court directed that summary judgment be entered on Count I of the Landowners' Second Amended Complaint which includes the claim relating to the operation of the real estate office. From our review of the designated materials, we conclude that there is a material question of fact whether the maintenance of the real estate office violates paragraphs 1 and 4 of the covenants. Accordingly, we reverse that part of the trial court's entry which grants summary judgment on the entirety of Count I of the Landowner's Second Amended Complaint as to the issue of the real estate office and remand for further proceedings and findings regarding this issue.

## III. Sub-division of Colucci's Lots

■ Colucci argues that the trial court erred when it granted summary judgment in favor of the Landowners and determined that Earl was "enjoined from selling, transferring, or otherwise disposing of lots 21, 31, and 32 in a fashion where the structures located on each lot, after such sale, transfer, or disposition, are owned by different individuals or entities, causing in any manner a subdivision of the original size of such lots," which was prohibited by paragraph 2 of the covenants. *Appellees' App.* at 20. Colucci contends that there was no evidence that supported this conclusion, and therefore the trial court should not have concluded that Earl violated paragraph 2 of the covenants.

Paragraph 2 of the covenants provided in pertinent part: "No parcel shall be subdivided any smaller than the original size of each separate parcel." *Appellants' App.* at 31. It is undisputed that Earl built multiple structures on each of his lots; two of his lots each contained two cabins, and the other lot contained a cabin and a garage/office structure. Although no evidence was presented that the sale or transfer of the lots was contemplated, the trial court prospectively enjoined Colucci from selling the lots in any fashion where the two structures on each lot were owned by different individuals, causing a subdivision of such lots. *Appellees' App.* at 20. We conclude that the trial court erred in this prospective injunction against Colucci.

Subdivide is defined as "to divide into several parts; ... to divide (a tract of land) into building lots." Merriam–Webster's Collegiate Dictionary 1171 (10th ed.1994). Here, although Earl had built separate structures on each of his lots, there was no evidence that he was planning to divide the lots into separate tracts of land or to sell the lots as two separate lots to separate buyers. As such, he had not violated paragraph 2 of the covenants, which prohibited the subdivision of lots within the neighborhood. Further, there was no covenant language that allowed only one single-family structure per lot and that prohibited Earl from building more than one structure on each lot. If the prohibition from building more than one structure on each lot was desired, it would have been simple to add language prohibiting such conduct. Therefore, in the absence of language specifically prohibiting the building of multiple structures on one lot, we conclude that Earl's construction of more than one structure on each of his lots did not constitute subdivid-

ing the lots and did not violate the covenants. Only if and when he attempts to further divide the lots by selling or transferring them to separate individuals, will Earl run afoul of the covenants.[2] The trial court erred when it granted summary judgment in favor of the Landowners on this issue.

## IV. Attorney Fees

■ Both parties raise arguments regarding their respective entitlement to attorney fees. The Landowners argue that they are entitled to an award of attorney fees and costs because they believe that summary judgment should have been granted in their favor as to a violation of paragraph 4 of the covenants and because summary judgment was granted in their favor as to a violation of paragraph 2. They also contend that the trial court erroneously found that Hubert was entitled to reasonable attorney fees since he prevailed in his defense as to whether he violated paragraph 4. Colucci argues that it is entitled to reasonable attorney fees because summary judgment was granted in its favor as to violating paragraph 4 of the covenants and because it contends that it did not violate paragraph 2 by subdividing its lots.

The pertinent part of paragraph 6 of the covenants states as follows: "In addition to all other remedies recoverable by the aggrieved party bringing legal or equitable action hereunder, such party, if successful, shall be entitled to recover reasonable attorney fees and costs of litigation." *Appellants' App.* at 34. At a previous point in the covenants, they state that the right to enforce the provisions is "dedicated and reserved" to the owners of the parcels in the neighborhood. *Id.* at 33. The covenants continue and state that, "[a]ny party to whose benefit any one or more of these covenants ... inure" may file a claim for the enforcement of such and recover "damages suffered by any violation of said covenants." *Id.*

Reading these sentences together, we conclude that an "aggrieved party" as stated in the covenants means an owner of a parcel of land in the neighborhood who proceeds to enforce any of the covenants and to recover for a violation of such. Therefore, Colucci is not an aggrieved party as contemplated by the covenants and is not entitled to attorney fees even though it may be ultimately successful in defending against the Landowners' claims. Further, although the trial court found that Hubert was entitled to attorney fees in its order on January 29, 2008, we conclude that this was error as Hubert was also not an aggrieved party as contemplated by the covenants and, therefore, not entitled to attorney fees. Additionally, because we affirm the trial court's conclusion that Colucci did not violate the covenants by renting its cabins, find that there is an issue of material fact as to whether Colucci violated paragraph 4 of the covenants by maintaining a real estate office on his property, and reverse the trial court's conclusion that Colucci improperly subdivided his property in violation of paragraph 2, we conclude that the Landowners have not yet been successful in any of their claims against Colucci and are therefore not yet entitled to attorney fees. We reverse any part of the trial court's order that is contrary to this holding.

---

**2.** Because Earl's actions have not actually violated the covenants, but may in the future, the issue is not ripe for judicial review. "Ripeness involves the timing of judicial review and the principle that judicial machinery should be conserved for problems that are real and present or imminent, not squandered on problems that are abstract or hypothetical or remote." *In re Paternity of M.G.S.,* 756 N.E.2d 990, 1004 (Ind.Ct.App.2001), *trans. denied* (2002).

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., and CRONE, J., concur.