FILED

12/08/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0214

DA 20-0214

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 305

CRAIG TRACTS HOMEOWNERS' ASSOCIATION, INC.,
TARA J. CHAPMAN & MATTHEW B. LOSEY,
DONALD C. and BEVERLY A. FRIEND, ROBERT J.
& ANDREA E. MARICICH FAMILY TRUST,
MICKELSON INVESTMENTS, LLC, SALLIE A. LOSEY,
HEMINGWAY PATRICK & CAROL T.
REVOCABLE LIVING TRUST,

> Plaintiffs and Appellants,

v.

BROWN DRAKE, LLC,

> Defendant and Appellee.

APPEAL FROM:     District Court of the First Judicial District,
                 In and For the County of Lewis and Clark, Cause No. BDV 2018-1622
                 Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

> For Appellants:
>
>> Dave Dalthorp, Scott Svee, Jackson, Murdo & Grant, P.C.,
>> Helena, Montana
>
> For Appellee:
>
>> Reid J. Perkins, Worden Thane P.C., Missoula, Montana
>
> For Amicus Curiae Community Association Institute:
>
>> Alanah Griffith, Patrick Tillisch, Griffith & Cummings, PLLC,
>> Big Sky, Montana
>
> For Amicus Curiae Steven and Gayle Muggli:
>
>> Afton E. Ball, Stephanie Baucus, Moulton Bellingham PC,
>> Billings, Montana

Submitted on Briefs:  October 28, 2020

Decided:  December 8, 2020

Filed:

_____
                    Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Plaintiffs appeal a First Judicial District Court ruling on cross motions for summary judgment in favor of defendant Brown Drake, LLC. We affirm.

¶2 We restate the issue on appeal as follows:

*Whether the District Court erred in determining that Brown Drake, LLC's operation of the Brown Drake Lodge violated the Amended Covenant's requirement that the property be "used for residential purposes only."*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Brown Drake, LLC (Brown Drake) consists of four individuals and owns a fishing lodge on the Missouri River known as the Brown Drake Lodge (the Lodge). Brown Drake's owners built the Lodge in 2017 with fly anglers in mind. The Lodge is on property that is part of the Craig Tracts Homeowners' Association (HOA). A restrictive covenant (Original Covenants) recorded on July 13, 1983, restricted the property as follows:

USE FOR RESIDENCE ONLY: The above described real property . . . shall be used for residential purposes only.
There shall be no use of the real property or any building constructed thereon for commercial or business use or for the use of a motel, hotel or apartment house, except for professional occupations.

¶4 The Original Covenants were amended on September 29, 1984 (Amended Covenants), deleting the reference to commercial, business, or hotel/motel/apartment house uses such that it simply reads: "USE FOR RESIDENCE ONLY: The above described real property . . . shall be used for residential purposes only." The Amended Covenants were in effect at the time Brown Drake purchased the property. While a member of Brown Drake was undertaking this purchase, a real estate agent informed the individual

3

that at least one other home in the area subject to the HOA had previously been used for a short-term rental at various times. The Brown Drake member went forward with the purchase with the expectation that Brown Drake would use the property in a similar manner.

¶5 Brown Drake advertises short term stays at the Lodge on a website and a Facebook page. A local flyfishing shop also advertises the Lodge and does all of the Lodge's booking. A stay at the Lodge costs $650 per night, plus a seven percent lodging tax and a three percent sales tax. The Lodge is licensed and insured as a "tourist home" under Montana law. *See* § 50-51-102(12), MCA. According to Brown Drake, those who stay at the Lodge spend their time doing various activities including: bathing; showering; grooming; dressing; sleeping; cooking; preparing, eating, and cleaning up after meals; talking; rearing children; watching television; enjoying the scenery; playing; using the bathroom; maintaining hygiene; sitting and relaxing; walking; entertaining; browsing the internet and social media; reading; sheltering; and to "couple." For approximately eight or nine months out of the year, the owners of Brown Drake stay at the property, on and off, when the Lodge is not occupied by paying members of the public.

¶6 On December 28, 2018, the plaintiffs (collectively, "the HOA") commenced this action for injunctive and declaratory relief against Brown Drake, alleging that the operation of the Lodge violated the Amended Covenants' requirement that property be "used for residential purposes only." After both parties moved for summary judgment, the District Court issued a March 10, 2020 order ruling in favor of Brown Drake. This appeal followed.

## STANDARD OF REVIEW

¶7 A district court's interpretation of a restrictive covenant is a conclusion of law which the Montana Supreme Court reviews for correctness. *Czajkowski v. Meyers*, 2007 MT 292, ¶ 21, 339 Mont. 503, 172 P.3d 94 (citation omitted). We review a district court's summary judgment ruling de novo. *Bardsley v. Pluger*, 2015 MT 301, ¶ 11, 381 Mont. 284, 358 P.3d 907 (citation omitted).

## DISCUSSION

¶8 *Issue: Whether the District Court erred in determining that Brown Drake, LLC's operation of the Brown Drake Lodge violated the Amended Covenant's requirement that the property be "used for residential purposes only."*

¶9 The HOA challenges the District Court's conclusion that the Lodge's use complies with the Amended Covenants and grant of summary judgment. Summary judgment is appropriate when there is "no genuine issue as to any material fact" and the party "is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). Restrictive covenants, like contracts, are interpreted to ascertain the intention of the parties. *Creveling v. Ingold*, 2006 MT 57, ¶ 8, 331 Mont. 322, 132 P.3d 531 (citations omitted). Where language is clear and explicit, the Court will apply the language as written. *Creveling*, ¶ 8. The language should be interpreted according to its ordinary and popular meaning. *Creveling*, ¶ 10. The Court will construe restrictive covenants strictly and resolve ambiguities in favor of free use of property. *Czajkowski*, ¶ 21 (citation omitted). We will consider evidence extrinsic to the language of the restrictive covenant itself if an ambiguity is found. *See Creveling*, ¶ 9. Ambiguity is a question of law for the Court to determine and exists where the language, as a whole, is subject to two different reasonable interpretations.

*Czajkowski*, ¶ 21. The simple presence of a dispute among the parties is insufficient to establish an ambiguity. *Creveling*, ¶ 8 (citations omitted).

¶10 What appears to be the majority of other jurisdictions to have considered this issue have found that "residential purposes" provisions do not prohibit short term rentals. *See Santa Monica Beach Prop. Owners Ass'n v. Acord*, 219 So.3d 111, 114 (Fla. Ct. App. 2017); *Houston v. Wilson Mesa Ranch Homeowners Ass'n*, 360 P.3d 255 (Colo. Ct. App. 2015); *Wilkinson v. Chiwawa Communities Ass'n*, 327 P.3d 614 (Wash. 2014) (en banc); *Estates at Desert Ridge Trails Homeowners' Ass'n v. Vazquez*, 300 P.3d 736 (N.M. Ct. App. 2013); *Slaby v. Mountain River Estates Residential Ass'n*, 100 So. 3d 569 (Ala. Civ. App. 2012); *Russell v. Donaldson*, 731 S.E.2d 535 (N.C. Ct. App. 2012); *Applegate v. Colucci*, 908 N.E.2d 1214 (Ind. Ct. App. 2009); *Mason Family Trust v. DeVaney*, 207 P.3d 1176 (N.M. Ct. App. 2009); *Ross v. Bennett*, 203 P.3d 383 (Wash. Ct. App. 2008); *Scott v. Walker*, 645 S.E.2d 278 (Va. 2007); *Lowden v. Bosley*, 909 A.2d 261 (Md. 2006); *Mullin v. Silvercreek Condo. Owner's Ass'n*, 195 S.W.3d 484 (Mo. Ct. App. 2006); *Pinehaven Planning Bd. v. Brooks*, 70 P.3d 664 (Idaho 2003); *Yogman v. Parrott*, 937 P.2d 1019 (Or. 1997) (en banc); *Catawba Orchard Beach Ass'n v. Basinger*, 685 N.E.2d 584 (Ohio Ct. App. 1996). These decisions focus on *what* is being done at a particular premises, not *how long* any particular individual is doing the activity for. *See Acord*, 219 So.3d at 114 ("[T]he critical issue is whether the renters are using the property for ordinary living purposes such as sleeping and eating, not the duration of the rental." (citation omitted)). According to Brown Drake, because those staying at the Lodge use it to eat, drink, use the

bathroom, sleep, and conduct other activities consistent with "residential purposes," the Lodge is being used in a manner that does not violate the restrictive covenant at issue.

¶11    Brown Drake's proposed analysis focuses on the consequences stemming from particular *activities* taking place on a given parcel. For example, the disturbances caused by a neighboring Lodge occupant "enjoying the scenery" are likely negligible compared with that of a neighbor's busy autobody shop—regardless of whether the activity is undertaken by the same person or someone new each day.

¶12    In contrast, other jurisdictions looking at similar language have reached different conclusions. *See Hensley v. Gadd*, 560 S.W.3d 516, 524 (Ky. 2018) ("[O]ne-night, two-night, weekend, weekly inhabitants cannot be considered 'residents' within the commonly understood meaning of the word, or the use by such persons as constituting 'residential.'"); *Eager v. Peasley*, 911 N.W.2d 470, 478 (Mich. Ct. App. 2017) ("Defendant's transient, short-term rental usage violates the restrictive covenant requiring 'private occupancy only' and 'private dwelling.'"). These determinations appear to align with dictionary definitions that frequently describe these terms with reference to an expectation of regularity over time. *See Reside*, Merriam-Webster Dictionary, https://perma.cc/RW2A-EYBD (last visited December 2, 2020) (defining "reside" as "to dwell permanently or continuously: occupy a place as one's legal domicile."); *Residence*, Black's Law Dictionary (5th ed. 1979) (defining "residence" as "personal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently.").

¶13    We agree with these jurisdictions that the common understanding of the word "residential" often goes beyond the mere existence of an activity at a fleeting instant in time to imply a pattern of regularity or duration.  *See, e.g., O'Connor v. Resort Custom Builders*, 591 N.W.2d 216, 221 (Mich. 1999) (adopting the trial court's conclusion that a "residential purpose" has a "permanence to it, and a continuity of presence").  For example, most weekend vacationers, after booking a place to spend the night, would probably not list their local place of accommodation as their "residence."  However, it is also the case that many people in Montana, like the members of Brown Drake, have vacation properties that do serve residential purposes but are clearly not intended as the owner's principal residence.

¶14    Related legal provisions suggest a similar understanding of the durational role of residence.  Montana statutes regulate enterprises such as the Lodge similarly to hotels, requiring health inspections and a lodging tax.  *Compare* § 50-51-103, MCA (regulating a "tourist home" such as the Lodge in the chapter regulating hotels, motels, and rooming houses), *with* Title 70, chapter 24, MCA (Residential Landlord and Tenant Act of 1977 regulating residential rentals).

¶15    While the HOA's interpretation of the Amended Covenants is reasonable, the Amended Covenants' text does not explicitly say how long—if at all—a given person or their belongings must remain within a particular property in order for the property to serve a residential purpose.[1]  We have defined "residential" as "dwelling in a place for some

---

[1] It is undisputed that the owners of the property stay at the Lodge eight or nine months of the year.

8

time," *Tipton v. Bennett*, 281 Mont. 379, 382, 934 P.2d 203, 205 (1997) (quotation omitted), but we have not determined how long constitutes "some time." We cannot say that the many jurisdictions—as well as our own District Court—to have adopted Brown Drake's proposed interpretation of "residential" were unreasonable. Since there are multiple reasonable interpretations of this language, we join with those courts to have found such language ambiguous in this context. *See Czajkowski*, ¶ 21 (defining language as ambiguous when susceptible to multiple reasonable interpretations); *see also Scott,* 645 S.E.2d at 283; *Applegate,* 908 N.E. 2d at 1220; *Yogman*, 937 P.2d at 1021 ("The ordinary meaning of 'residential' does not resolve the issue . . . because a 'residence' can refer simply to a building used as a dwelling place, or it can refer to a place where one intends to live for a long time."); *Dunn v. Aamodt*, 695 F.3d 797, 800 (8th Cir. 2012) (finding the phrase "residential purposes" in restrictive covenant ambiguous as to short-term rental of property).

¶16 Because the language of the restrictive covenant in question is ambiguous, we look to evidence beyond the face of the document. *See Creveling*, ¶ 9. Notably, the Original Covenants' prohibition against the use of the property for "commercial or business use or for the use of a motel, hotel or apartment house, except for professional occupations" was removed in the Amended Covenants, suggesting that the parties intended to take a less restrictive approach.

¶17 Furthermore, before purchasing the property at issue, an agent of Brown Drake had been informed by the real estate agent that at least one other home subject to the HOA had been rented out at various times. For a period of approximately eight years, that property

9

had been rented out on a short-term basis by none other than by the former president of the HOA. This prior use not only sheds light on the interpretation of the Amended Covenants but raises issues of Brown Drake's reasonable expectation of the use of its property. *See Wilkinson*, 327 P.3d at 622-23 (invalidating short term rental prohibition in part because owners "were not on notice" and in the interests of "protecting the reasonable and settled expectation of landowners in their property"); *see also Goeres v. Lindey's Inc.*, 190 Mont. 172, 619 P.2d 1194 (1980) (declining to enforce implied restriction as inequitable, considering owner's knowledge when purchasing the property); *Bordas v. Virginia City Ranches Ass'n.*, 2004 MT 342, ¶ 21, 324 Mont. 263, 102 P.3d 1219 (finding "the crucial covenants were those which were in place and of record at the time [the owners] purchased their property."); *Town & Country Estates Ass'n v. Slater*, 227 Mont. 489, 492, 740 P.2d 668, 670 (1987) ("We will closely review any enlargement of restrictions which conflict with reasonable land use, and which hinder substantive due process."). Brown Drake's members assert they bought the property based upon the understanding that the HOA had previously allowed short term rentals. Under the language of these Amended Covenants, Brown Drake's expectation that it could use the property for such purposes going forward was reasonable.

¶18 Brown Drake's use of the property is not inconsistent with that of a residential location. The owners of Brown Drake themselves stay on the property, on and off, throughout a majority of the year. The Lodge is made up of only three-bedroom suites, so the total quantity of guests brought into the neighborhood is limited. The HOA does not claim that the Lodge is the source of disturbance or intrusive, nuisance-like activity. There

is no evidence here that the Lodge's use detracts from the other neighborhood members' enjoyment of their own property or the area's "residential" character. *See Acord*, 219 So. 3d at 115 (upholding short term rentals under a restrictive covenant by distinguishing case at bar from cases involving intensive uses with an "indicia of business use" such as a manager to "control the guests" or use as a wedding and event venue).

¶19   We construe restrictive covenants strictly and strive to resolve ambiguities in favor of the unencumbered use of property. *Czajkowski*, ¶ 21 (citation omitted). Here, Brown Drake's operation of the Lodge does not violate the Amended Covenants under the HOA.

## CONCLUSION

¶20   For the reasons stated above, we agree with the District Court's conclusion that Brown Drake's use of the Lodge is not in violation of the Amended Covenants. Because there remains no dispute of material facts on the matter, the District Court did not err in granting summary judgment to Brown Drake.

¶21   Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE

11