FILED

09/17/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0069

DA 24-0069

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 208

APRIL MYERS, JAMES MYERS,
DARRYL WHITCANACK, PATRICIA MILLER,
EVERETT WESTERMAN, PATRICIA WESTERMAN,
JAMES STEVENSON, LONNIE BEKEL, and CINDY BEKEL,

      Plaintiffs and Appellants,

    v.

JOSEPH KLEINHANS and AMANDA KLEINHANS,

      Defendants and Appellees.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twenty-Second Judicial District,<br>In and For the County of Carbon, Cause No. DV-22-81<br>Honorable Matthew J. Wald, Presiding Judge |

COUNSEL OF RECORD:

      For Appellants:

          Eric Edward Nord, Crist, Krogh, Alke & Nord, PLLC, Billings, Montana

      For Appellees:

          Shane P. Coleman, Frans A. Andersson, Daniel W. Beierwaltes, Billstein, Monson & Small, PLLC, Billings, Montana

Submitted on Briefs: July 24, 2024

Decided: September 17, 2024

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Appellants are a group of residents in the Whitehorse Estates Minor Subdivision, including April and James Myers, Darryl Whitcanack, Patricia Miller, Everett and Patricia Westerman, James Stevenson, and Lonnie and Cindy Bekel (collectively the neighbors). The neighbors appeal the Order on Motions for Summary Judgment issued by the Twenty-Second Judicial District Court, Carbon County, on November 30, 2023. The Order granted summary judgment in favor of Joseph and Amanda Kleinhans and determined they did not violate the restrictive covenants by converting their garage into an accessory dwelling unit (ADU) and renting it out as an Airbnb.

¶2      We reverse and remand to the District Court for action consistent with this Opinion.

¶3      We restate the issue on appeal as follows:

*Whether the District Court erred when it determined the restrictive covenants do not prohibit the short-term rental of a single-family residence.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      There is no material dispute as to the facts in this case, but rather the parties dispute the meaning of the restrictive covenants governing their neighborhood. The neighbors and the Kleinhans reside on the same road within their subdivision. The neighbors filed a complaint against the Kleinhans on September 21, 2022, for violating the subdivision's covenants and restrictions. The neighbors alleged the Kleinhans violated the covenants by

converting their garage into an ADU rental property and renting it out as an Airbnb.[1]  By renting out their ADU, the neighbors alleged the Kleinhans violated the covenant that requires subdivision property to be used only for a single-family dwelling and the covenant that prohibits operation of a commercial business from subdivision property.

¶5      The language of the covenants state:

> No parcels within Whitehorse Estates Minor Subdivision may be subdivided and only single family dwellings and their associated outbuildings may be constructed within the boundaries of the subdivision, and only one such dwelling may be constructed on any lot within the subdivision. For the purpose of this restriction "single family dwelling" shall mean a building under one roof designed and intended for use and occupancy as a residence by a single family.

Further, the covenants state a dwelling "[m]ust be a structure intended for the use as a single family dwelling."  The "commercial business" provision states "[n]o commercial business, trade, or manufacture of any sort or nature shall be allowed."

¶6      The neighbors sought declaratory and injunctive relief requiring the Kleinhans to comply with the covenants and damages related to a breach of contract claim for violating the covenants.  Both parties filed cross motions for summary judgment with respect to the interpretation of the covenants.  The District Court granted summary judgment in favor of the Kleinhans on November 30, 2023.  The District Court reasoned neither covenant at issue prohibits Airbnb rentals.  The court interpreted the single-family dwelling covenant

---

[1] Airbnb is an online platform that allows individuals to rent out their properties or spare rooms to guests.  A garage apartment listed on Airbnb typically refers to a self-contained living space above or adjacent to a garage, which hosts offer to travelers as a short-term rental.

as structural rather than a use restriction, meaning the covenant only restricted the structural design to one single-family building and did not regulate it to use by only a single family. The court found the commercial business covenant to be ambiguous and thus it could not prohibit the Kleinhans from renting their ADU as an Airbnb. Pursuant to the court's award of summary judgment in favor of the Kleinhans, it also awarded them their request for their Bill of Costs, including appearance and deposition transcript fees, in the amount of $4,594.35. The neighbors now appeal.

## STANDARD OF REVIEW

¶7 We review summary judgment rulings de novo for conformance with M. R. Civ. P. 56. *Dick Anderson Constr., Inc. v. Monroe Prop. Co.*, 2011 MT 138, ¶ 16, 361 Mont. 30, 255 P.3d 1257. "Like interpretations of contracts, a district court's interpretation of a restrictive covenant is a conclusion of law reviewed for correctness." *Lewis & Clark Cnty. v. Wirth*, 2022 MT 105, ¶ 14, 409 Mont. 1, 510 P.3d 1206. Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). To meet the Rule 56 burden of showing that there is a genuine issue of material fact, the non-moving party must set out specific facts showing the existence of a genuine issue of material fact by more than mere denial, speculation, or pleading allegation. M. R. Civ. P. 56(e)(2).

## DISCUSSION

¶8 *Whether the District Court erred when it determined the restrictive covenants do not prohibit the short-term rental of a single-family residence.*

4

¶9 When interpreting a restrictive covenant, we apply the same principles applicable to contract interpretation. *Lewis & Clark Cnty.*, ¶ 16. When the language of a covenant is clear, extrinsic evidence is not considered, and "the Court must apply the language as written." *Creveling v. Ingold*, 2006 MT 57, ¶ 8, 331 Mont. 322, 132 P.3d 531. When interpreting a contract, we give words their plain and ordinary meaning unless a technical meaning is apparent. Section 28-3-501, MCA; *Krajacich v. Great Falls Clinic, LLP*, 2012 MT 82, ¶ 17, 364 Mont. 455, 276 P.3d 922. "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA. An ambiguity exists only when the language of the covenant can reasonably have two different meanings. *Czajkowski v. Meyers*, 2007 MT 292, ¶ 21, 339 Mont. 503, 172 P.3d 94.

¶10 Here, the language of two specific covenants is at issue. First, we consider the single-family dwelling covenant which states:

> No parcels within Whitehorse Estates Minor subdivision may be subdivided and only single family dwellings and their associated outbuildings may be constructed within the boundaries of the subdivision, and only one such dwelling may be constructed on any lot within the subdivision. For the purpose of this restriction "single family dwelling" shall mean a building under one roof designed and intended for use and occupancy as a residence by a single family.

The District Court found the covenant prohibits the structural construction of more than one single-family dwelling on any one lot, but the covenant does not restrict the lot's use to residence by a single family. Citing *Patton v. Madison County*, the Kleinhans assert the District Court was correct, arguing this covenant to be a structural restriction which limits

5

the type and number of buildings on the property, but does not place restrictions on the use of the property—that the phrase "single family dwelling" is a structural restriction that does not restrict the use of the property to single families only. They assert short-term rentals do not alter the residential purpose of the property. *See Patton v. Madison County*, 265 Mont. 362, 372, 877 P.2d 993, 998 (1994). We agree with the Kleinhans this is a structural restriction that does not necessarily alter the residential purpose of the property.

¶11 As a structural restriction, the covenant only allows one single-family dwelling per lot and its associated outbuildings. Here, the Kleinhans have created two separate single-family dwellings on their lot by converting their garage into an ADU. The ADU is not under the same roof as their own house, rather it is a separate dwelling unit within an associated outbuilding. Arguably, this could accommodate family and over-night visitors. The covenants are silent as to structural limitations on visitor or outbuilding accommodations.

¶12 As the structural restriction does not definitively preclude the structural modifications the Kleinhans made to their associated outbuilding, we must next consider the commercial business covenant which states: "[n]o commercial business, trade, or manufacture of any sort or nature shall be allowed" within the subdivision. The Kleinhans assert that neighbors' interpretation of the commercial business prohibition would permit them to have only non-paying guests stay in their ADU and that *Craig Tracts* considered and rejected this argument. The Kleinhans misconstrue the issue and our holding in *Craig*

*Tracts Homeowners' Association, Inc. v. Brown Drake, LLC*, 2020 MT 305, 402 Mont. 223, 477 P.3d 283.

¶13    In *Craig Tracts*, owners of a fishing lodge advertised on a website and a Facebook page short term stays at a nightly fee.  The restrictive covenants provided that the property "shall be used for residential purposes only."  This Court considered whether short-term rentals of a fishing lodge violated this use restriction.[2]  The property owners asserted those who stayed at the lodge engaged in residential use activities including bathing, grooming, dressing, sleeping, cooking, eating, relaxing, and other activities people do when residing in their homes.  In considering the restrictive covenant we determined the word "residential" was ambiguous because a "residence" can refer simply to a building used as a dwelling place, or it can refer to a place where one intends to live permanently.  *Craig Tracts*, ¶ 15.  As the covenant was ambiguous, we looked to evidence beyond the restrictive covenant document—including that the homeowners association previously allowed short term rentals, the covenants had been amended to remove commercial business restrictions, and the use of the property was not inconsistent with that of a residential location—to ultimately determine the operation of the lodge as a short-term rental business did not violate the restrictive covenants.  *Craig Tracts*, ¶ 19.  In *Craig Tracts*, we did not interpret

---

[2] Earlier, the Craig Tracts Homeowners Association covenants had restricted commercial use stating, "There shall be no use of the real property or any building constructed thereon for commercial or business use or for the use of a motel, hotel or apartment house, except for professional occupations."  This language had been subsequently removed from the covenants. *Craig Tracts*, ¶¶ 3-4.

whether operation of a short-term rental business violated a use provision restricting commercial business use such as the one present here.

¶14     In considering the commercial business restriction, the District Court pointed out the covenants do not define "commercial business." As such, the District Court determined "commercial business" was ambiguous, and if applied broadly, would lead to absurd results.[3] The District Court found short-term rentals did not fall into the category of commercial business, rather they are of such a short nature that the low level of commerce does not reach the level of commercial business referred to in the covenants.

¶15     However, according to Montana contract law, when a term is not specifically defined in a document, we must apply the plain, ordinary meaning, unless a technical meaning is apparent. Section 28-3-501, MCA. The Montana Code Annotated defines "business" as "any lawful activity conducted primarily for the sale of services to the public." Section 70-31-102, MCA. The Montana Code Annotated also defines "commerce" to include "all commerce within this state and subject to the jurisdiction of this state and includes the operation of any business or service establishment." Section 50-30-102, MCA. Cambridge Dictionary defines "commercial" as "used for selling goods or providing services for money, rather than for personal use."[4] Black's Law Dictionary defines "commercial" as "[o]f, relating to, or involving the buying and selling of goods."

---

[3] Such as precluding residents from having garage sales.

[4] *Commerce*, *Cambridge Dictionary*, https://perma.cc/WJF7-Y4CT (last visited Sept. 11, 2024).

*Commercial*, *Black's Law Dictionary* (11th ed. 2019). It defines "business" as "[a] commercial enterprise carried on for profit." *Business*, *Black's Law Dictionary* (11th ed. 2019). Thus, applying the ordinary meaning of "commercial business," we find the term is not susceptible to more than one meaning, and there is no ambiguity. It is clear the covenant prohibits for-profit business use on subdivision property, and the Kleinhans are in violation of this covenant when they rent out their ADU as an Airbnb.[5] When we read the covenants as a whole to ascertain their meaning, *Newman v. Wittmer*, 277 Mont. 1, 6, 917 P.2d 926, 929 (1996), they clearly prohibit what the Kleinhans are doing—operating a commercial short term rental business carried on for profit.

¶16    While it is true, as the Kleinhans argue, that ambiguities in covenants must be interpreted to allow for the free use of property, *Craig Tracts*, ¶ 19, we decline to read ambiguities into a covenant that is clear on its face. Section 1-2-101, MCA (courts may not insert what has been omitted nor omit what has been inserted).

¶17    As such, we determine the Kleinhans, by operating a commercial short term rental business carried on for profit, are in violation of the subdivision's covenants. As discussed above, the District Court incorrectly determined "commercial business" was ambiguous before applying the plain meaning of the term.

---

[5] While the District Court believed such interpretation would lead to the preclusion of things such as garage sales, that issue is not before us and we make no determination as to whether infrequent, isolated sale of a resident's personal property constitutes a "commercial business."

**Bill of Costs**

¶18     Because we reverse the District Court's award of summary judgment in favor of the Kleinhans, we also reverse the District Court's award of the Kleinhans' Bill of Costs.

## CONCLUSION

¶19     We reverse and remand to the District Court to enter summary judgment in favor of the neighbors consistent with this Opinion.

/S/ INGRID GUSTAFSON


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE