FILED

03/11/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0502

DA 24-0502

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2025 MT 47

CHARLIE'S WIN, LLC, a Wyoming
limited liability company,

        Plaintiff and Appellee,

    v.

GALLATIN WEST RANCH HOMEOWNERS'
ASSOCIATION, INC., a Montana non-profit
corporation,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-23-61
Honorable Peter Ohman, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Alanah Griffith, Griffith & Associates, PC, Big Sky, Montana

        For Appellee:

            Michael A. Shumrick, Jean Y. Meyer, Meyer Construction Law, LLC,
Bozeman, Montana

        Submitted on Briefs:  February 12, 2025

                Decided:  March 11, 2025

Filed:

                           _____
                               Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    The Gallatin West Ranch Homeowners' Association, Inc., (Gallatin West) appeals from a January 3, 2024 order of the Eighteenth Judicial District Court, Gallatin County, granting summary judgment in favor of Charlie's Win, LLC, (Charlie's Win) in a declaratory judgment action. The District Court determined the covenants governing the Gallatin West Ranch Subdivision (Subdivision) had lapsed. We affirm.

¶2    We restate the following issue for review:

*Whether the District Court erred in concluding that a renewal clause in the covenants had not been effectively enacted and that the Subdivision was therefore no longer subject to any enforceable covenants.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    The parties do not dispute the material facts in this case and instead disagree over the meaning of the restrictive covenants governing the Subdivision. Gallatin West recorded the original Declaration of Protective Covenants of Gallatin West Subdivision on August 11, 1992, (Declaration) and subsequently recorded three amended declarations on September 10, 1992 (First Amended Declaration), September 24, 1992 (Second Amended Declaration), and October 22, 1992 (Third Amended Declaration). Each of these contained the same language governing the duration of the restrictive covenants: "The Covenants outlined herein shall be in effect for a period of 25 years, and thereafter can be extended by a vote of 2/3 majority vote of the owners."

¶4    In 2015, Gallatin West members considered a Fourth Amended Declaration, which provided for additional terms and changes to the Third Amended Declaration. The changes allowed for metal roofs and backyard chicken coops. Of the 24 owners within the

2

Subdivision, 15 voted to approve the Fourth Amended Declaration, eight owners abstained, and one owner voted against it. The Fourth Amended Declaration was recorded on August 13, 2015.

¶5 On January 23, 2023, Charlie's Win, owner of real property within the Subdivision and subject to the restrictive covenants, filed a complaint for declaratory judgment maintaining the restrictive covenants had expired on October 22, 2017, by the terms of the Third Amended Declaration. Charlie's Win maintained the Fourth Amended Declaration was not effectively enacted and, therefore, Gallatin West could not enforce the Fourth Amended Declaration. Gallatin West denied the covenants had lapsed and counterclaimed, alleging violations of the covenants by Charlie's Win. Both parties moved for summary judgment. After an August 8, 2023, hearing, the District Court granted summary judgment to Charlie's Win, concluding that Gallatin West had failed to secure the affirmative vote of two-thirds of the owners within the Subdivision to effect an extension of the covenants within their 25 year duration. Gallatin West now appeals.

**STANDARD OF REVIEW**

¶6 We review a district court's grant of summary judgment *de novo*, using the same standards applied by the district court. *Wurl v. Polson School Dist. No. 23*, 2006 MT 8, ¶ 10, 330 Mont. 282, 127 P.3d 436. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

# DISCUSSION

¶7 Gallatin West makes three alternative arguments. First, that the 2015 vote properly adopted the Fourth Amended Declaration. Second, that the 2015 vote constituted a modification of the entirety of the Third Amended Declaration, thus renewing the covenants for an additional 25 years from the recording date. Third, Gallatin West argues the covenants are ambiguous and thus continued enforceability requires an analysis of the history of conduct between the parties.

¶8 We employ principles of contract law when interpreting covenants. *Lewis & Clark Cnty. v. Wirth*, 2022 MT 105, ¶ 16, 409 Mont. 1, 510 P.3d 1206 (citation omitted). When the language of a covenant is clear, extrinsic evidence is not considered, and we must apply the language as written. *Myers v. Kleinhans*, 2024 MT 208, ¶ 9, 418 Mont. 113, 556 P.3d 529 (quotation omitted). "When interpreting a contract, we give words their plain and ordinary meaning unless a technical meaning is apparent." *Myers*, ¶ 9 (citations omitted).

¶9 Here, the parties dispute the meaning of the specific covenant governing the duration of the effective period of the covenants. The provision, consistent from the original Declaration through the contested Fourth Amended Declaration, provides that "the covenants as outlined herein shall be in effect for a period of 25 years, and thereafter can be extended by a vote of 2/3 majority vote of the owners." The declarations additionally define "owner" as the "legal titled holders or contract purchasers, whether one or more persons or entities, owning or purchasing a fee simple title to any lot." At the time of the 2015 vote on the Fourth Amended Declaration, Gallatin West comprised 24 owners. Of

the 16 owners who voted on the adoption of the Fourth Amended Declaration, 15 voted in favor and one voted against the renewal of the restrictive covenants. The other eight abstained. Gallatin West would have us consult extrinsic evidence in support of its conclusion that the Fourth Amended Covenants secured the required two-thirds majority, but these arguments would require our analysis to extend beyond the four corners of the restrictive covenants. "We cannot insert in the documents something which is not there." *Bordas v. Virginia City Ranches Ass'n*, 2004 MT 342, ¶ 24, 324 Mont. 263, 102 P.3d 1219. Simple math tells us that while this total represented an overwhelming majority of the participating owners, the 15 affirmative votes to ratify the Fourth Amended Declaration constitutes only a 62.5 percent majority of all the owners. Based on the plain language of the covenants, we reject Gallatin West's argument that only the owners who voted should be used in determining whether there was a two-thirds majority. The covenants do not make such a distinction. Thus, the 2015 vote failed to constitute a two-thirds majority of *all* owners as required by the Third Amended Declaration. The District Court determined that the language of the covenants was clear. It found that Gallatin West never complied with the covenant's requirements to implement and therefore enforce the Fourth Amended Declaration against Charlie's Win. We conclude the District Court was correct.

¶10 We turn next to Gallatin West's claim that the 2015 vote modified, rather than renewed, the entirety of the covenants. Here, Article VII, section 6, of the Third Amended Declaration allows for the waiver, termination, modification, or expansions of the covenants with the written consent of 60 percent of the owners. Gallatin West likewise

asserts that nothing within the language of the covenants prohibits "adopting an entirely new set of covenants" through the amendment process. However, Gallatin West's argument would render the renewal clause's voting standard of two-thirds majority ineffective because the covenants could be extended with only a 60 percent vote of the owners. The Third Amended Declaration provided the mechanism for extending the covenants within its renewal clause—a separate and distinct provision from the modification clause. The Fourth Amended Declaration likewise kept the renewal clause separate and distinct from the modification clause. Thus, in both declarations there was one voting standard for modifying the covenants and a different, higher standard for renewing the covenants. Indeed, the Fourth Amended Declaration kept the same two-thirds majority voting standard in its renewal clause. Although the Fourth Amended Declaration did effectively modify the Third Amended Declaration when 60 percent of the owners voted to allow for previously forbidden metal roofs and backyard chicken flocks, the covenants as modified remained only in effect from their adoption on August 13, 2015, until the expiration of the 25-year duration of the Third Amended Declaration on October 22, 2017. Absent a vote meeting the two-thirds majority voting standard of the renewal clause, the Third Amended Declaration expired by operation of its own terms. It is clear from the Declarations themselves that both Declarations, and each respective renewal and modification term, provided for different voting standards to renew or modify the covenants.

¶11 Gallatin West's remaining argument contends the covenants are ambiguous and asks us to examine the conduct of the parties following the 2015 vote. An ambiguity exists only when the language of the covenant can reasonably have two different meanings. *Myers*, ¶ 9 (citation omitted). "[T]he mere fact that the parties disagree as to the interpretation of a contract does not automatically create an ambiguity." *Wurl*, ¶ 17 (citations omitted). Here, the plain language of the covenants provides for an extension only upon a two-thirds majority vote in the affirmative by owners within the Subdivision. Because we conclude there is no reasonable ambiguity in the language of the covenants, we decline to pursue an examination of the history of conduct between the parties to determine whether Charlie's Win is estopped from denying the enforceability of the covenants. The renewal clause simply defines the majority as being two-thirds of the owners.

**CONCLUSION**

¶12 The District Court correctly concluded the Third Amended Declaration expired by its own terms on October 22, 2017, when Gallatin West failed to ratify the Fourth Amended Declaration with a two-thirds majority of Subdivision owners. Accordingly, Gallatin West cannot enforce the Fourth Amended Declaration against Charlie's Win.

¶13 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M BIDEGARAY

7

/S/ INGRID GUSTAFSON
/S/ JIM RICE