FILED

07/22/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0716

DA 23-0716

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 155

RODNEY BRANDT, HEIDI BRANDT,
MARSHALL FLADAGER, NEVA FLADAGER,
ARRY LAUTARET and RENA LAUTARET,

  Plaintiffs, Appellees, and
  Cross-Appellants,

 v.

R&R MOUNTAIN ESCAPES, LLC,
A MONTANA LIMITED LIABILITY COMPANY,

  Defendant, Appellants, and
  Cross Appellees.

APPEAL FROM: District Court of the Eleventh Judicial District,
       In and For the County of Flathead, Cause No. DV-2022-1201E
       Honorable Danielle Coffman, Presiding Judge

COUNSEL OF RECORD:

  For Appellants:

    Stephanie Baucus (argued), Bobbi K. Owen, Gerry P. Fagan, Moulton
    Bellingham, PC, Billings, Montana

  For Appellees:

    Sean S. Frampton (argued), Frampton Purdy Law Firm, Whitefish,
    Montana

  For Amicus Curiae Montana Landlords Association:

    Michael Sol, Michael Sol Law Firm, PLLC, Missoula, Montana

For Amicus Curiae Bridger Canyon Property Rights Coalition:

Reid J. Perkins, Worden Thane, P.C., Missoula, Montana

Jon Dean, Alexandria V. Ruiz, Nicole M. Baade, Sidley Austin, LLP, Los Angeles, California

Argued and Submitted:  March 19, 2025

Decided:  July 22, 2025

Filed:

_____
Clerk

2

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 R&R Mountain Escapes, LLC, ("R&R") appeals from the November 13, 2023 Order of the Eleventh Judicial District Court, Flathead County, granting summary judgment to Rodney and Heather Brandt, Marshall and Neva Fladager, and Larry and Rena Lautaret (collectively, "the Neighbors"). The District Court held the restrictive covenants governing the parties' residential properties in a subdivision near Whitefish, Montana, prohibited R&R's short-term rentals. As a prevailing party, the Neighbors requested attorney fees, which the District Court denied. R&R appeals the court's order barring short-term rentals and the Neighbors cross-appeal the denial of attorney fees.

¶2 We restate the following issues on appeal:

1. *Whether, when considering the Homeowner Covenants (the Declaration) as a whole, short-term rentals are prohibited.*

2. *Whether the Neighbors should be awarded attorney fees.*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 In late 1990, Edna Mae Astrope (Astrope) recorded with the Flathead County Clerk and Recorder's Office a "Declaration of Covenants, Conditions, and Restrictions" (the Declaration) against her property located outside Whitefish, Montana. The parties to this case own property subdivided from Astrope's property and are consequently subject to the Declaration.

¶4 R&R's principals, Russell Palmer and Ramona Stewart (Stewart), purchased one of the subdivided Astrope parcels in November of 2020 and conveyed the property to R&R by quitclaim deed in February 2022. On April 14, 2022, R&R entered into a Management

3

Rental Agreement with I Love Whitefish Vacation Rentals, a vacation rental company in Whitefish. R&R's home is actively marketed and managed by I Love Whitefish through national companies like Airbnb and VRBO, in addition to I Love Whitefish's local website. R&R accepts reservations for up to ten guests per night on the property. R&R earned over $55,000 in gross income in 2022 and projected it would earn $45,599 from reservations in 2023. In June 2022, R&R successfully applied for a conditional use permit with Flathead County to allow for short-term rentals of the property. The Neighbors then filed suit to declare that short-term rentals violate the Declaration and to enjoin R&R's use of the property in that manner.

¶5    The relevant covenants of the Declaration provide:

> A) <u>PROTECTIVE COVENANTS</u>: The following Protective Covenants are designed to provide a uniform plan for development of the hereinabove described property, and to preserve, insofar as practical, the natural beauty of said property and *to encourage the development of said property for country residential living*.
> 1.    <u>Land Use</u>. All of the parcels of land within the herein described property are designed and intended as and for small *farm or ranch* tracts, and shall be used *only for country residential purposes*.
> a)    No piece, parcel, tract or any part of the herein described property shall be used at any time for any *business*, trade, manufacture, or any other *commercial purpose* whatsoever, including junk or wrecking lots, mobile home parks, etc.

(Emphasis added). The Declaration exempts from the prohibition on commercial activity the "normal agricultural use of land[,]" including agricultural products or crops grown for "personal consumption" and the raising of livestock, except for pigs or the use of feed lots. Noteworthy here, the Neighbors have used their individual properties for raising cattle.

4

¶6     The Declaration allows only "private, single family" residences and prohibits using the dwelling as an "apartment or multi-family structure":

> 2.     <u>Building Types & Uses</u>:  No buildings shall be erected, altered, placed or permitted on any tract, parcel or piece of the herein described property, *except a dwelling used for residential purposes and its related outbuildings, such as a garage, barn and shelters.*
>     A)  Any dwelling erected or placed upon any of said property shall be used only as a private, single-family residence, and no dwelling, building or structure may be applied to, used, or occupied, *as an apartment or multi-family structure.*

(Emphasis added).  Nuisances are likewise expressly prohibited:

> 7)     <u>Nuisances</u>:  No noxious or offensive activity shall be carried on upon any lot, *nor shall anything be done thereon which may be or may become an annoyance or nuisance to the neighborhood.*  Trailer courts are expressly prohibited.

(Emphasis added).  Finally, the Declaration prohibits signs, except for the purpose of advertising for "sale or rent" an owner's particular property:

> 6)     <u>Signs</u>  No signs, advertising billboards or advertising structures of any kind shall be erected, used or maintained on this property, *except for the purpose of advertising for sale or rent* the property upon which it is erected.

(Emphasis added).

¶7     Both parties moved for summary judgment.  The Neighbors supported their motion with affidavits attesting to the increased traffic within the area, which severely and negatively impacted the neighborhood.  Vehicles belonging to R&R renters often sped up the drive and were reckless, endangering pedestrians and their pets who enjoy the one-mile, single lane driveway utilized by the small, seven parcel subdivision.  The driveway, East Blanchard Lake Road, has no turn-off lane from Highway 93 and only residents living in

5

the subdivision use the drive. R&R's guests have frequently driven onto the Neighbors' property past no trespassing signs when they have not been able to locate R&R's rental, sometimes late at night. On one occasion, the Neighbors attested that six unattended children staying at R&R's property entered a pasture with a bull and the owner had to act quickly to get them out. The Neighbors also provided the court with online listings of R&R's property on short-term rental websites; the property management agreement between R&R and the rental manager; and financial statements showing revenue and expense of the property. R&R submitted an affidavit from Stewart regarding the scope of the short-term rental operation as well as exhibits related to the Neighbors' use of their properties for agricultural purposes. Stewart's affidavit distinguished between the number of days paying guests occupied the house and when the house stood vacant or was being used by R&R principals or family. Of the 942 days between the purchase of the home by the R&R principals and June 28, 2023, paying guests had rented the home for approximately 90 days. Twenty-seven days, according to Stewart, were allocated for paying guests, while R&R reserved the remaining 88 days of the Summer 2023 rental season for personal use. She further attested to the extent of the Neighbors' calving operation.

¶8    The District Court entered judgment in favor of the Neighbors on November 13, 2023. After first noting that the Declaration was ambiguous based on *Craig Tracts Homeowners' Ass'n, Inc., v. Brown Drake, LLC*, 2020 MT 305, 402 Mont. 223, 477 P.3d 283, because no explicit duration for residential purpose was set forth, the court found

6

that the Declaration's "broad and substantial language, and in particular the broad prohibition against 'any' commercial use 'whatsoever'" prohibited short-term rental use. The court incorporated Flathead County, Mt., Zoning Regulations § 5.11.010 (2022) to define short-term rentals as any use for periods of time less than 30 days. Finally, the court denied the Neighbors' request for attorney fees concluding there was an ambiguity in the Declaration and it would not be in the interests of justice to penalize R&R with an award of fees.

¶9 R&R appeals the Order on summary judgment and the Neighbors cross-appeal the denial of attorney fees. After receiving supplemental briefing on our intervening decision of *Myers v. Kleinhans*, 2024 MT 208, 418 Mont. 113, 556 P.3d 529, the Court held oral arguments on March 19, 2025.

**STANDARD OF REVIEW**

¶10 We review summary judgment rulings de novo for conformance with M. R. Civ. P. 56. *Myers*, ¶ 7 (citation omitted). "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). As with contracts, a district court's interpretation of a restrictive covenant presents a conclusion of law we review for correctness. *Myers*, ¶ 7 (quotation omitted).

¶11 We review a district court's decision on attorney fees for an abuse of discretion. *Mont. Env. Info. Ctr. v. Governor* (*MEIC*), 2025 MT 112, ¶ 7, 422 Mont. 136, 569 P.3d

555 (citation omitted).  A district court abuses its discretion if the court acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice.  *MEIC*, ¶ 7 (citation omitted).

## DISCUSSION

¶12    *1. Whether when considering the Homeowners Covenants (the Declaration) as a whole, short-term rentals are prohibited.*

¶13    We employ principles of contract law when interpreting covenants.  *Charlie's Win, LLC, v. Gallatin W. Ranch Homeowners' Ass'n*, 2025 MT 47, ¶ 8, 421 Mont. 59, 565 P.3d 299 (citation omitted).  When language of a covenant is clear, we apply the language as written rather than consider extrinsic evidence.  *Myers*, ¶ 9 (quotation omitted).  An ambiguity exists only when the language of the covenant can reasonably have two meanings.  *Czajkowski v. Meyers*, 2007 MT 292, ¶ 21, 339 Mont. 503, 172 P.3d 94.  Whether an ambiguity exists is a question of law.  *Creveling v. Ingold*, 2006 MT 57, ¶ 8, 331 Mont. 322, 132 P.3d 531.  Unless a technical meaning is apparent, we give words "their plain and ordinary meaning."  *Myers*, ¶ 9.  "The whole of the contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other."  Section 28-3-202, MCA.  "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."  Section 28-3-301, MCA.

¶14    R&R argues that the District Court erred in grafting a 30-day rental limitation onto the Declaration.  R&R contends the Declaration unambiguously permits short-term rentals because it does not prohibit rentals and there is no durational limitation contained in the

covenants.  R&R argues that if there is any ambiguity in the covenants it must be interpreted in favor of the free use of property.  The Neighbors maintain the District Court correctly found that R&R's short-term rental use violated the "country residential living," "country residential purpose," and "commercial use prohibition" covenants, among others, contained within the Declaration.

¶15    Two recent decisions of this Court guide our discussion.  In *Craig Tracts*, we considered whether short-term rentals of a fishing lodge violated a restrictive covenant that provided the property "shall be used for residential purposes only."  *Craig Tracts*, ¶¶ 3-4. We said that the term "residential purposes" depends on both the function the property serves for its occupant and the duration of time the property is used.  *Craig Tracts*, ¶ 13. We rejected the notion that function alone is determinative of what is a residential purpose. *Craig Tracts*, ¶ 13.  Thus, even if the function the property is serving are activities such as bathing, grooming, dressing, cooking, eating, relaxing, and other activities people do when in their homes, there remains a durational element to "residential purpose." *Craig Tracts*, ¶¶ 10, 14.  We agreed with a small number of jurisdictions that "the common understanding of the word 'residential' often goes beyond the mere existence of an activity at a fleeting instant in time to imply a pattern of regularity or duration."  *Craig Tracts*, ¶ 13.  We concluded the covenant was ambiguous because it did not expressly say how long a given person or their belongings must remain within a particular property in order to serve a residential purpose. *Craig Tracts*, ¶ 15. We then considered extrinsic evidence, concluding it supported allowing short-term rentals, and relied on the presumption in favor of the free

9

use of property when an ambiguity is present. *Craig Tracts*, ¶ 16-18. We held the particular residential purpose restriction did not prohibit short-term rentals. *Craig Tracts*, ¶ 19 (citations omitted).

¶16 As a point of clarification following *Craig Tracts*, it is true that courts may consider extrinsic evidence of the subject matter and surrounding circumstances to "'avail themselves of the same light which the parties possessed *when the contract was made*.'" *Rumph v. Dale Edwards, Inc*., 183 Mont. 359, 368, 600 P.2d 163, 168 (1979) (quoting *Kintner v. Harr*, 146 Mont. 461, 472, 408 P.2d 487, 494 (1965)). (Emphasis added). The general rule of excluding evidence when the language of the covenant is clear does not preclude consideration of surrounding circumstances to initially determine whether an instrument is ambiguous. Courts may consider "objective evidence of 'the circumstances under which [the instrument] was made, including the situation of the subject of the instrument and of the parties to it.'" *Mary J. Baker Revocable Tr. v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶¶ 47, 55, 338 Mont. 41, 164 P.3d 851 (quoting § 1-4-102, MCA). But the extrinsic evidence must relate to the *making* of the covenants and the parties' intent when constructing certain provisions; extrinsic evidence cannot be used to show that, following the construction of the instrument, the use was of a certain type or subsequently varied from the plain language of the instrument. The purpose of the extrinsic evidence is limited to ascertaining the circumstances surrounding the making of the instrument. Because the existence of an ambiguity is for the court to decide, *Creveling*, ¶ 8, if, following consideration of the covenant's language as written and extrinsic evidence

of the circumstances surrounding its making, the court determines there remains an ambiguity, then the presumption in favor of the free use of property will apply. It would not be appropriate to submit the matter to a jury.[1]

¶17 Nearly all courts to have considered whether residential-purposes provisions in restrictive covenants prohibit short-term rentals have held they do not.[2] Many of these

---

[1] Although whether an ambiguity exists is a question of law for a court to decide, whether a homeowners covenant or contract has been materially breached is considered a question of fact, which can be decided by a jury. *Flaig v. Gramm*, 1999 MT 181, ¶ 25, 295 Mont. 297, 983 P.2d 396; see also *Norwood v. Serv. Distrib., Inc.*, 2000 MT 4, ¶ 35 297 Mont. 473, 485, 994 P.2d 25, 33.)

[2] *Slaby v. Mountain River Ests. Residential Ass'n*, 100 So. 3d 569, 579-80 (Ala. Civ. App. 2012); *accord Houston v. Wilson Mesa Ranch Homeowners Ass'n*, 2015 COA 113, ¶ 19, 360 P.3d 255 (Colo. App. 2015) ("[W]e agree . . . that mere temporary or short-term use of a residence does not preclude that use from being 'residential.'"); *Santa Monica Beach Prop. Owners Ass'n v. Acord*, 219 So. 3d 111, 114 (Fla. Dist. Ct. App. 2017) ("[I]n determining whether short-term vacation rentals are residential uses of the property, the critical issue is whether the renters are using the property for ordinary living purposes such as sleeping and eating, not the duration of the rental."); *Lowden v. Bosley*, 909 A.2d 261, 267 (Md. 2006) ("The fact that the owner receives rental income is not, in any way, inconsistent with the property being *used* as a residence . . . . 'Residential use,' without more, has been consistently interpreted as meaning that the use of the property is for living purposes, or a dwelling, or a place of abode."); *Lake Serene Prop. Owners Ass'n v. Esplin*, 334 So. 3d 1139, 1143 (Miss. 2022) ("The salient point is whether or not the property itself is being used in a manner that a place of abode would be used, not how long the property is being used as a place of abode."); *Ests. at Desert Ridge Trails Homeowners' Ass'n v. Vazquez*, 2013-NMCA-051, ¶ 16, 300 P.3d 736 (N.M. Ct. App. 2013) (declining to "'attach any requirement of permanency or length of stay'" (quoting *Mason Family Tr. v. DeVaney*, 2009-NMCA-048, ¶ 12, 207 P.3d 1176, 1178 (N.M. Ct. App. 2009))); *Wilson v. Maynard*, 2021 SD 37, ¶ 19, 961 N.W.2d 596 (S.D. 2021) ("It is undisputed the Property is used to eat, sleep, and enjoy recreational activities. Therefore, short-term vacation rentals are a residential purpose consistent with the Covenants."); *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 291 (Tex. 2018) ("[S]o long as the occupants to whom [the owner] rents his single-family residence use the home for a 'residential purpose,' no matter how short-lived, neither their on-property use nor [the owner's] off-property use violates the restrictive covenants in the . . . deeds."); *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wash. 2d 241, ¶ 17, 327 P.3d 614 (Wash. 2014) ("If a vacation renter uses a home 'for the purposes of eating, sleeping, and other residential purposes,' this use is residential, not commercial, no matter how short the rental duration." (quoting *Ross v. Bennett*, 148 Wash.App 40, ¶ 26, 203 P.3d 383 (Wash. Ct. App. 2008))).

11

courts have concluded that "residential" has no durational component and refers only to ordinary living purposes such as eating, sleeping, and bathing. A small number of courts, such as ours, have acknowledged that the term "residential" includes a durational component, but because the term is imprecise respecting the length of occupancy, these courts have ultimately found the covenants at issue ambiguous.[3] Only a few courts have held that a residential purpose covenant unambiguously prohibits short-term rentals.[4] Hence, our decision in *Craig Tracts*, by embracing both a functional and durational component for "residential purpose," placed Montana among a small number of state courts that are analytically predisposed to finding the term ambiguous, when looking at only that provision of a covenant. *Craig Tracts*, ¶ 15.

¶18 In *Myers*, we did not consider a residential purpose covenant as in *Craig Tracts*; rather, we considered a single-family dwelling covenant and a commercial business

---

[3] *Applegate v. Colucci*, 908 N.E.2d 1214, 1220 (Ind. Ct. App. 2009) ("[W]e recognize that . . . the definition of residential seems to contemplate a more permanent presence . . . ."); *Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997) ("[A] 'residence' . . . can refer to a place where one intends to live for a long time."); *Garrett v. Sympson*, 523 S.W.3d 862, 867 (Tex. Ct. App. 2017) (concluding that "residential purposes" could reasonably be interpreted to require "an intention to be physically present in a home for more than a transient stay[.]"); *Scott v. Walker*, 645 S.E.2d 278, 283 (Va. 2007) (noting possibility that "a residential purpose requires an intention to be physically present in a home for more than a transient stay").

[4] *Hensley v. Gadd*, 560 S.W.3d 516, 524 (Ky. 2018) ("[O]ne-night, two-night, weekend, weekly inhabitants cannot be considered 'residents' within the commonly understood meaning of that word . . . ."); *Edwards v. Landry Chalet Rentals, LLC*, 246 So. 3d 754, 758 (La. Ct. App. 2018) ("The occupants are in the property on a transient basis only and are not utilizing the property for residential purposes."); *cf. O'Connor v. Resort Custom Builders, Inc.*, 591 N.W.2d 216, 221 (Mich. 1999) ("[R]esidential purposes [refers to] . . . a place where someone lives, and has a permanent presence . . . as a resident, whether they are physically there or not.").

prohibition. *Myers*, ¶¶ 12-14. After concluding that the single-family dwelling covenant did not inform our analysis, we addressed a covenant prohibiting commercial businesses. *Myers*, ¶ 12. Applying the definitions of "business" and "commerce," as provided for by § 28-3-501, MCA, and § 50-30-102, MCA, respectively, and the Black's Law Dictionary definitions of "commercial" and "business," we held the unambiguous meaning of the covenant prohibited for-profit renting of an accessory dwelling unit because it was a commercial operation. *Myers*, ¶¶ 13, 15 (citations omitted). We declined to interpret the covenant in favor of the free use of property, refusing to read an ambiguity into a covenant that was clear on its face. *Myers*, ¶ 16.

¶19     When construing and harmonizing the covenants of the Declaration at issue here, as we must do, and after applying rules of statutory construction as identified, we conclude that the unambiguous intent and language of the covenants was to provide for residential country living, including the ability to farm and ranch, with only single-family dwellings used for residential, and not commercial, purposes. Further, the covenants unambiguously prohibit anything that may or may not become an annoyance or nuisance to the neighborhood. Taking the whole of these covenants together, with each helping to interpret the other, their language unambiguously prohibits the commercial business of renting out a home on a short-term basis which undisputedly created a nuisance to other homeowners in the subdivision and interfered with their residential country living. *Craig Tracts* informs our decision to the extent it requires that "residential purpose" include a durational component, but *Craig Tracts* does not render every covenant that uses the term

"residential" ambiguous if construing all covenants together consistently makes clear the underlying intent of the Declaration. *Craig Tracts*, ¶ 14. Here, the particular covenants and restrictions of "country residential living"; the prohibition of "any commercial use whatsoever"; the prohibition of any "nuisances" such as the additional traffic of nonresidents; the requirement that the dwelling be a "private, single family residence" and not an "apartment or multifamily structure"; and the intended use of properties "as small farms and ranches" dispositively and unambiguously exclude short-term commercial rentals that are nationally advertised and allow for five-day rentals of up to 10 guests.

¶20     Considering the plain language of the Declaration as a whole, there is no ambiguity in its language; the Declaration clearly prohibits the commercial business of renting a dwelling for five days with ten guests, as the "guests" are not "living" there as country residents, using the land as farm and ranch tracts, or using the dwelling as a single-family residence, and are, in fact, creating an undisputed nuisance. The short-term rental of R&R's property is more akin to an apartment, which is specifically prohibited by the covenants. While the District Court incorrectly found an ambiguity in the covenants based on its reliance on *Craig Tracts*, it correctly determined that the Declaration excluded the short-term rentals at issue here. It erred, however, in grafting a 30-day minimum occupancy requirement before use of a property could be considered residential. Our decision today is based on the particular facts of the case and the covenants at issue. We will not insert language into the covenants that is not there. Section 1-4-101, MCA.

¶21    R&R argues because there is a limited exception to the prohibition of placing a sign or advertising property for "sale or rent," that the covenants contemplate rental use. However, the issue here is short-term rentals and whether short-term rentals are prohibited by the several covenants restricting use to "country residential living," "residential purpose," "farm and ranch" use, and no "commercial use." The sign covenant was intended to prohibit the erection of signs, and the terms of the sign covenant extend only to signs, not to the use and building covenants. The sign covenant does not alter the restrictive covenants and can be harmoniously interpreted consistent with the Declaration as a whole—a rental is allowable if it is consistent with country residential living. Rules of statutory interpretation prevent this Court from extending this limited exception to defeat the purpose and intent of the Declaration as a whole, which is to "encourage the development of [the] property for residential country living." Here, we must construe all the covenants consistently together and, unlike in *Craig Tracts*, we have many covenants to consider that all indicate the same intent and purpose of the Declaration; that is, to encourage country residential living and to prohibit commercial activity.

¶22    *2. Whether the Neighbors are entitled to attorney fees.*

¶23    The Declaration provides that "any person who shall prosecute an action successfully [for a violation of the Declaration] may recover any damages resulting from such violation . . . ." Hence, the Declaration permissively allows for attorney fees to the prevailing party in an action arising from a violation of the restrictive covenants. The prevailing party is the party who secures an affirmative judgment in their favor at the

15

conclusion of the entire case. *Larsen v. Sayers*, 2025 MT 24, ¶ 37, 420 Mont. 270, 563 P.3d 269 (quotation omitted).

¶24 In its oral pronouncement of its summary judgment ruling, the District Court lamented that our decision in *Craig Tracts* was less than clear. The court noted that we allowed extrinsic evidence in *Craig Tracts* of the "neighbor's enjoyment of their own property and the residential character" and that we considered the "reasonable expectations of the use of the property." Here, the District Court explained that it must find the covenant ambiguous because of *Craig Tracts*, although it concluded as a whole the covenants were restrictive and written to exclude commercial purposes and short-term rentals. The court vacillated between considering extrinsic evidence and relying on the presumption in favor of the free use of property, ultimately concluding that the covenants were meant to be more restrictive. In denying fees, the court reasoned that because part of its ruling was that there was an ambiguity, a party should not be punished by an award of attorney fees for having to litigate a provision of the covenant. As we have held, use of the term "residential" or "commercial" may not render every covenant necessarily ambiguous if we can discern the underlying intent of the declaration. Opinion, ¶ 17. Here, the District Court, struggling with what direction to pursue based on *Craig Tracts*, concluded it would be unfair to punish a party for having to litigate potentially ambiguous covenants. The decision of whether to award attorney fees under the Declaration was committed to the sound discretion of the District Court. We conclude under these facts that the court did not abuse its discretion.

16

## CONCLUSION

¶25 The District Court's order concluding that R&R's short-term rentals violated the covenants of the Declaration is affirmed. Considering the Declaration as a whole, the multitude of covenants unambiguously prohibit short-term rentals of 5 days and 10 guests. We affirm the District Court's denial of the Neighbors' request for attorney fees.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ KATHERINE M BIDEGARAY
/S/ INGRID GUSTAFSON
/S/ JIM RICE

Chief Justice Cory J. Swanson, concurring.

¶26 I concur with the resolution of this matter, but write separately because I depart from the Majority's analysis that the short-term rentals violated the "country living" requirements and the "nuisance" prohibitions of the restrictive covenants. Those two conditions are necessarily fact-intensive. Some people consider playing tag with the neighbor's bull or driving ATVs around the neighborhood at all hours of the night as the quintessential definition of country living. Whether the property owners violated those conditions should be left to a jury. I would not affirm the District Court's granting of summary judgment on those bases alone.

17

¶27    Ordinarily, I would ask a jury to determine whether the short-term rentals in this case were for a residential or a commercial purpose. But in this matter, there is no genuine issue of material fact; s*ee* Hr'g on Summ. J., at 65:4–9 (Nov. 7, 2023); *see also* Pls.' Mot. for Summ. J., at 1–2; Def.'s Resp. to Pls.' Mot. for Summ. J., at 14; Def.'s Br. in Supp. of Cross Mot. for Summ. J., at 1; and this case is resolved by a legal interpretation of the restrictive covenants.

¶28    In that regard, the Majority is correct. The restrictive covenant prohibits using the property for a commercial *purpose*, and this legal interpretation dictates the result we reach today. The covenant's language is not ambiguous.

¶29    The covenant states:

> No piece, parcel, tract or any part of the herein described property shall be used at any time for any business, trade, manufacture, or any other commercial purpose whatsoever, including such as junk or wrecking lots, mobile home parks, etc.

The Appellants argue this covenant does not prohibit short-term rentals when read and interpreted in its context. They argue the interpretative canon of *noscitur a sociis* or "the company they keep" limits the prohibited commercial uses to ones with a "nuisance-like character," such as junk or wrecking yards, manufacturing uses, or mobile home parks. Setting aside the well-established Montana norm of country living in mobile homes, the Appellants argue the restrictive covenants define commercial use according to this list.

¶30    I must disagree, because Appellants misuse the canon. The associated-words canon means "words grouped in a list should be given related meanings." Antonin Scalia & Brian Garner, *Reading Law: The Interpretation of Legal Texts*, 195 (2012) (citation omitted).

18

The canon generally applies to multiple listed or associated words with something in common, and their commonality helps define any term which is ambiguous. *See, e.g., Yates v. United States*, 574 U.S. 528, 544, 135 S. Ct. 1074, 1085 (2015), ("'Tangible object' is the last in a list of terms that begins 'any record [or] document.'"). This interpretive canon does not support the Appellants' argument, because here, "commercial purpose" is the last in a list of broadly-stated prohibitions of property use at "any time for any business, trade, manufacture, or any other commercial purpose whatsoever." The prohibition on any commercial purpose, understood in the company it keeps, is broad, all-inclusive, and clear.

¶31 The Appellants argue the *noscitur a sociis* canon limits "commercial purpose" to similar types of uses like "junk or wrecking lots, mobile home parks, etc." But this misapplies the canon. The canon informs the use of "commercial" in association with the three preceding terms in its list. It does not limit "commercial" based upon the non-exhaustive list of particularly egregious uses of the property ("including such as . . .") which follow it. The Appellants would have a more apt argument referring to the *ejusdem generis* canon, or a list of similar items that ends with a catchall word or phrase including others of the same type. *See* Scalia & Garner, at 199–213. But even this canon does not weaken the clearly-stated intention to broadly prohibit any use of the property for commercial purposes.

¶32 I agree with the Appellants and Amici Montana Landlords Association and Bridger Canyon Property Rights Coalition, that property owners have a fundamental right to freely

and lawfully use their property.  But this is not a case of local or state government restrictions imposed upon the property owners.  This is a case of restrictive covenants, imposed by a property owner upon herself as part of her subdivision, and these covenants were voluntarily and willingly accepted by subsequent property owners upon purchase of their land.  In purchasing the land burdened by such a covenant, the property owner obtains an expectation the covenant will be enforced, including upon the neighbor who is similarly burdened.  *Town & Country Ests. Ass'n v. Slater*, 227 Mont. 489, 492, 740 P.2d 668, 671 (1987) ("Each purchaser in a restricted subdivision is both subjected to the burden and entitled to the benefit of a restrictive covenant.").  A court's cavalier treatment of such a property right would be contrary to settled Montana law, even as we grapple with a new and nuanced application not foreseen when the covenants were established.

/S/ CORY J. SWANSON